UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRUCE E. TAYLOR, *on behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CARCO GROUP, INC., CISIVE and DRIVER iQ INCORPORATED<br>Defendant. | )<br>)<br>)<br>)  **CIVIL ACTION**<br>)  **NO:**_____<br>)<br>)<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT

1. On behalf of himself and all others similarly situated, Plaintiff Bruce E. Taylor ("Plaintiff" or "Mr. Taylor"), by and through his attorneys, Francis Mailman Soumilas, PC, and the Law Offices of Robert P. Cocco, respectfully allege as follows:

## NATURE OF THE ACTION

2. This is a consumer class action brought for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"), against Defendants Carco Group, Inc., Cisive, and Driver iQ, Incorporated ("Defendants" or "Carco"), a/d/b/a Driver iQ and a/d/b/a as Cisive, both of whom are consumer reporting agencies regulated by the FCRA. Defendants deprive consumers of their rights under the FCRA by failing to adopt and employ procedures to assure maximum possible accuracy of a consumer's information when it prepares consumer reports. Specifically, as exemplified below, Defendants misattribute the derogatory and defamatory criminal and driving records pertaining to other individuals on the consumer reports of job applicants and employees.

1

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) as Defendants regularly conduct business in this district and division and a substantial part of the events giving rise to the claims occurred in this district and division.

## PARTIES

5. Mr. Taylor is a natural person, a resident of New Jersey, and a "consumer" as protected and governed by the FCRA.

6. Defendant Carco Group, Inc. is a "person" and "consumer reporting agency" as defined by 15 U.S.C. §§ 1681a(b) & 1681a(f), and is a corporation that conducts business throughout the United States and that has its principal place of business located at 5000 Corporate Court, Suite 203, Holtsville, NY 11742. Carco owns and operates consumer reporting agencies Defendant Cisive and Driver iQ.

7. Defendant Cisive is a "person and "consumer reporting agency" as defined by 15 U.S.C. §§ 1681a(b) & 1681a(f), and is a corporation that conducts business throughout the United States and that has its principal place of business located at 5000 Corporate Court, Suite 203, Holtsville, NY 11742. Cisive operates consumer reporting agencies Defendant Carco Group, Inc. and Driver iQ, Inc.

8. Defendant Driver iQ, Inc. (hereafter "Driver iQ") is a "person and "consumer reporting agency" as defined by 15 U.S.C. §§ 1681a(b) & 1681a(f), and is a corporation that conducts business throughout the United States and that has its principal place of business located at 5000 Corporate Court, Suite 203, Holtsville, NY 11742.

9. At all relevant times hereto, each Defendant, separately and working together, function as independent consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

10. Congress passed the FCRA to protect consumers from the harm caused by the instant Defendant's reporting. To this end, the FCRA requires that all consumer reporting agencies (CRAs) that report criminal background information to employers use "reasonable procedures to ensure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

11. Defendant systematically violates the FCRA by furnishing inaccurate driving history and criminal record information data, all of which constitute consumer reports, to its employer customers. Specifically, due to faulty matching criteria that has been found systemically violative of the FCRA by numerous circuits and the Consumer Financial Protection Bureau, Defendants attribute the records of other individuals on consumers' report.

12. With respect to Mr. Taylor, Defendants violated the FCRA when Driver iQ furnished a consumer report on Mr. Taylor to his conditional employer, J.B. Hunt Transport, Inc. (hereafter, "JB Hunt").

13. Plaintiff Bruce Taylor applied for employment with JB Hunt as a driver in or around March 2022.

14. Mr. Taylor was qualified for the position, and had no criminal background or anything in his background that would have rendered him unemployable.

15. After an interview, JB Hunt made an offer of employment to Mr. Taylor contingent upon drug screen and background check results.

16. In connection with Mr. Taylor's application, JB Hunt purchased a background screening report from "Driver iQ" for the purpose of evaluating his eligibility for employment.

17. On or about March 12, 2022, using its usual practices and procedures, Driver iQ compiled and furnished criminal records data for use in a consumer background report to Defendant JB Hunt regarding Mr. Taylor.

18. To run the consumer report, JB Hunt provided to Defendant Mr. Taylor's first, middle, and last names, his date of birth, his address (including state of residence), and other personal-identifying information.

19. On or about March 18, 2022, while Plaintiff had already started working and was accompanying a JB Hunt driver for training purposes, JB Hunt contacted Plaintiff and advised him that he was terminated.

20. JB Hunt did not provide Plaintiff with a reason for the termination or a copy of the March 12, 2022, Driver iQ report.

21. Immediately thereafter, Mr. Taylor attempted to reach JB Hunt to understand why he had been terminated.

22. After several failed attempts, Mr. Taylor made contact with JB Hunt on or about April 14, 2022, and JB Hunt's representative verbally informed Mr. Taylor that it terminated him due to a felony criminal charge in his history.

23. Mr. Taylor was shocked, angry, distressed, embarrassed and distraught because he knew that Defendant had reported inaccurate information.

24. JB Hunt still had not provided Plaintiff with a copy of the Background Report.

25. Thereafter, Plaintiff completed an authorization form from JB Hunt and repeatedly sent it to JB Hunt to gain a copy of his Background Report.

26. Plaintiff finally received a physical copy of the Background Report on or about May 7, 2022, after his termination of employment.

27. The consumer report that Defendants prepared was expected to be used for employment purposes.

28. Upon review of the report, Plaintiff discovered a felony record referenced as "NEW JERSEY/CAMDEN NJ-FEDERAL" marked as "Adverse" (the "inaccurate criminal record") that was the cause of his termination.

29. The criminal record was completely inaccurate, as Plaintiff does not have any criminal record, let alone a felony record.

30. The inaccurate criminal record related to another individual with the same first and last name as the Plaintiff Mr. Taylor, but did not contain any date of birth or social security number or address, and there was no match on the middle name. Defendants' own report noted "NO DOB LOCATED."

31. The actual criminal record that was misreported about the Plaintiff related to a Felony conviction in the District of New Jersey (Newark vicinage) relating to Possession of a Firearm by a Convicted Felon with a date of offense of 2/20/2018 and a sentencing date of 7/20/2021.

32. The inaccurate criminal record was defamatory *per se* because it reflected criminal behavior and/or moral turpitude about Mr. Taylor in that it portrayed him as a two-time felon, and thus, was actionable at common law, giving Mr. Taylor clear Article III standing.

33. Defendants knew or should have known that reporting the inaccurate criminal record on Plaintiff's report violated the FCRA because there were insufficient identifiers to match, only a first and last name which the law prohibits.

34. At a minimum, the lack of any other information about the felon record should have caused Defendants to escalate the report to ensure that the record belongs to Mr. Taylor before furnishing the report to JB Hunt that identifies Mr. Taylor a felon.

35. In addition, no felon in the National Felon Registry matched Mr. Taylor's middle name, date of birth, or city of residence. This, too, should have caused Defendants to escalate the report to ensure that the record belongs to Mr. Taylor.

36. Plaintiff was deprived of an opportunity to dispute the report's accuracy with Driver iQ accordingly.

37. JB Hunt never sent Mr. Taylor a "Notice of Adverse Action" letter.

38. JB Hunt denied Mr. Taylor's application for employment based partly or solely upon the felony criminal charge inaccurately reported on his background check.

39. After a period of approximately four (4) days, Plaintiff again became employed as a driver but at a much reduced weekly salary.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> All persons residing in the United States (including all Territories and other political subdivisions of the United States) about whom, beginning five years prior to the filing of this Complaint and continuing through to the date of Plaintiff's motion for class certification, Defendants reported an adverse public record or driving history: i) without requiring a match of all of the available identifiers supplied by the job applicant or employee who was the subject of the report with those in the underlying public record or driving history; and/or ii) utilized name-only match logic; and/or c) that pertained to another individual.

41. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

6

42. **Numerosity.   FED. R. CIV. P. 23(a)(1).**  The Class members are so numerous that joinder of all is impractical.  Upon information and belief, Defendants furnished hundreds, if not thousands, of consumer reports on consumers each year in which Defendants labeled the consumer as a felon or otherwise reported adverse public record information, and those persons' names and addresses are identifiable through documents maintained by Defendant.

43. **Existence and Predominance of Common Questions of Law and Fact.   FED. R. CIV. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Class and predominate over the questions affecting only individual members.  The common legal and factual questions include, among others: (a) whether Defendants willfully violated section 1681e(b) of the FCRA.

44. **Typicality.   FED. R. CIV. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each Class member.  Plaintiff has the same claims for statutory and punitive damages as Class members, arising out of Defendants' common course of conduct.

45. **Adequacy.   FED. R. CIV. P. 23(a)(4).**  Plaintiff is an adequate representative of the Class.  His interests are aligned with and not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously.  Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class.

46. **Predominance and Superiority.   FED. R. CIV. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation

necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding

## FIRST CLAIM FOR RELIEF
### 15 U.S.C. § 1681e(b) – Class Claim

47. Plaintiff realleges all prior Paragraph as if fully set forth herein.

48. Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports furnished regarding Plaintiff and the Class members.

49. Defendants knew or should have known about their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

50. Defendants obtained or had available substantial written materials that apprised them of their duties under the FCRA.

51. Despite knowing of these legal obligations, Defendants acted consciously in breaching their known duties and deprived Plaintiff of his rights under the FCRA.

52. Defendants' violation of the FCRA was willful, rendering Defendants liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

## SECOND CLAIM FOR RELIEF
### N.J.S.A. 56:11-32(b) – Individual Claim

53. Plaintiff realleges all prior Paragraph as if fully set forth herein.

54. Defendants violated the New Jersey Fair Credit Reporting Act ("NJFCRA"), N.J.S.A. 56:11-28 *et seq* by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report furnished regarding Plaintiff. N.J.S.A. 56:11-32(b).

55. Defendants' violation was both willful and negligent, entitling Plaintiff to recover actual damages, statutory damages, punitive damages and attorneys' fees and costs under N.J.S.A. 56:11-38(a) and 39(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

    a. An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

    b. An award of actual, statutory and punitive damages for Plaintiff and the Class;

    c. An award of pre-judgment and post-judgment interest as provided by law;

    d. An award of attorney's fees and costs; and

    e. Such other relief as the Court deems just and proper

## DEMAND FOR JURY TRIAL

PLAINTIFF hereby demands a jury trial on all claims for which he has a right to a jury.

DATED: December 28, 2022

By: */s/ James A. Francis*
James A. Francis (NJ Bar #012601996)
**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis (#012601996)
John Soumilas (#020371999)
Lauren KW Brennan (#074202013)
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
Email: jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Robert P. Cocco
ROBERT P. COCCO, P.C.
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
bob.cocco@phillyconsumerlaw.com

Ira Rheingold*
National Association of Consumer Advocates
Litigation Project
1215 17th St. NW, 5th Floor
Washington, DC 20036
Tel: (202) 452-1989
Ira@consumeradvocates.org

*Attorneys for Plaintiff and the Class*

**Pro Hac Vice* application forthcoming